Simon Franzini (Cal. Bar No. 287631)
simon@dovel.com
Grace Bennett (Cal. Bar No. 345948)
grace@dovel.com
DOVEL & LUNER, LLP
201 Santa Monica Blvd., Suite 600
Santa Monica, California 90401
Telephone: (310) 656-7066
Facsimile: +1 (310) 656-7069

*Attorneys for Plaintiff*

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| SHARON MANIER, individually and on behalf of all others similarly situated,<br><br>*Plaintiff*,<br><br>v.<br><br>DOONEY & BOURKE, INC.,<br><br>*Defendant*. | Case No. 5:26-cv-05641<br><br>**CLASS ACTION COMPLAINT**<br><br>**DEMAND FOR JURY TRIAL** |

# Table of Contents


I. Introduction. ... 1

II. Parties ... 6

III. Jurisdiction and Venue. ... 6

IV. Facts. ... 6

A. Defendant's fake prices and fake discounts. ... 6

B. Defendant's purported regular prices were not the prevailing prices during the 90 days immediately preceding Defendant's advertisement of the purported discounts. ... 29

C. Defendant's advertisements are unfair, deceptive, and unlawful. ... 30

D. Defendant's advertisements harm consumers. ... 31

E. Plaintiff was misled by Defendant's misrepresentations. ... 32

F. Defendant breached its contract with and warranties to Plaintiff and the putative Class. ... 34

V. Class action allegations. ... 36

VI. Claims. ... 37

First Cause of Action: Violation of California's False Advertising Law Bus. & Prof. Code §§ 17500 & 17501 et. seq. ... 37

Second Cause of Action: Violation of California's Consumer Legal Remedies Act ... 39

Third Cause of Action: Violation of California's Unfair Competition Law ... 41

Fourth Cause of Action: Breach of Contract ... 43

Fifth Cause of Action: Breach of Express Warranty ... 44

Sixth Cause of Action: Quasi-Contract/Unjust Enrichment ... 45

Seventh Cause of Action: Negligent Misrepresentation ... 46

Eighth Cause of Action: Intentional Misrepresentation ... 47

VII. Relief. ... 48

VIII. Demand for Jury Trial. ... 48

## I. Introduction.

1. Advertised "sale" prices are important to consumers. Consumers are more likely to purchase an item if they know that they are getting a good deal. Further, if consumers think that a sale will end soon, they are likely to buy now, rather than wait, comparison shop, and buy something else.

2. While there is nothing wrong with a legitimate sale, a fake one—that is, one with made-up regular prices, made-up discounts, and made-up expirations—is deceptive and illegal.

3. Section 17500 of California's False Advertising Law prohibits businesses from making statements they know or should know to be untrue or misleading. Cal. Bus. & Prof. Code § 17500. This includes statements falsely suggesting that a product is on sale, when it actually is not.

4. Moreover, Section 17501 of California's False Advertising Law provides that "[n]o price shall be advertised as a former price … unless the alleged former price was the prevailing market price … within three months next immediately preceding" the advertising. Cal. Bus. & Prof. Code § 17501. So, in addition to generally prohibiting untrue and misleading fake discounts, it also specifically prohibits this particular flavor of fake discount (where the advertised former price is not the prevailing price during the specified timeframe).

5. In addition, California's Consumer Legal Remedies Act prohibits "advertising goods or services with intent not to sell them as advertised" and specifically prohibits "false or misleading statements of fact concerning reasons for, existence of, or amounts of price reductions." Cal. Civ. Code § 1770(a)(9), (13).

6. Moreover, the Federal Trade Commission's regulations prohibit false or misleading "former price comparisons," for example, making up "an artificial, inflated price … for the purpose of enabling the subsequent offer of a large reduction" off that price. 16 C.F.R. § 233.1. They also prohibit false or misleading "retail price comparisons" and "comparable value comparisons," for example, ones that falsely suggest that the seller is "offer[ing] goods at prices lower than those being charged by others for the same merchandise" when this is not the case. 16 C.F.R. § 233.2.

7. As numerous courts have found, fake sales violate these laws. And, they also violate California's general prohibition on unlawful, unfair, and deceptive business practices. *See* Cal. Bus. & Prof. Code § 17200.

8. Defendant Dooney & Bourke Inc. ("Defendant" or "Dooney & Bourke") sells and markets purses and other hand bags online through its website, www.dooney.com (the "Website" or "Dooney & Bourke Website").

9. On its website, Defendant lists purported regular prices and purported limited-time sales offering steep discounts from those regular prices. For example, Defendant consistently promotes "up to X% Off" with a constant stream of rotating promotions purportedly linked to specific holidays or events. Here are some examples:




*Captured April 13, 2023*




*Captured January 19, 2024*




*Captured September 8, 2025*

10. Defendant also attempts to add a sense of urgency by advertising that its sales are connected to certain holidays or events, which reasonable consumers reasonably understand means that the sales are limited-time and will end after that holiday or event. For example advertising "Black Friday Savings," or a "Mother's Day Sale":




*Captured November 20, 2024*




*Captured May 7, 2026*

11. Other times, Defendant advertises that its sales are "limited time," warns consumers not to "miss" the advertised sale, or includes an end date for its sales. For example:




*Captured March 28, 2025*




*Captured February 2, 2025*




*Captured May 5, 2025*




*Captured August 14, 2025*

12. But when the purportedly time-limited sales end, Defendant's prices do not return to normal for most of Defendant's Products. Instead, the sales are simply replaced with a different, but substantially similar, new sale. In other words, most of Defendant's Products are routinely on sale pursuant to some offered promotion.[1]

13. As a result, everything about Defendant's price and purported discount advertising is false. The list prices Defendant advertises are not actually Defendant's regular prices, because Defendant's Products are routinely available for less than them. The purported discounts Defendant advertises are not the true discounts a customer is receiving, and are often not a discount at all. Nor are the purported discounts limited time—quite the opposite, they are consistently available.

14. As described in greater detail below, on December 4, 2025, after reviewing Defendant's website, www.dooney.com, and seeing and relying on an advertised sale, Plaintiff Sharon Manier bought a Product from Defendant. When Ms. Manier made this purchase, Defendant advertised that a purported sale was going on, and Ms. Manier believed that she was being offered a steep discount from the purported regular price that Defendant advertised. And based on Defendant's representations, Ms. Manier believed that she was purchasing a Product whose regular price and market value was the list price that Defendant advertised, that she was receiving a specific and substantial discount, and that the opportunity to get that discount was time-limited. These reasonable beliefs caused Ms. Manier to buy from Defendant when she did.

15. In truth, however, the representations Ms. Manier relied on were not true. The purported regular price Defendant advertised was not the true regular price at which Defendant usually sells the Product. The purported discount was not a true discount, and the purported sale was ongoing—not time-limited. Had Defendant been truthful, Plaintiff and other consumers like her would not have purchased the Products, or would have paid less for them.

---

[1] Some of Defendant's Products are excluded from Defendant's sales. Products that are excluded from Defendant's sales are not accused in this lawsuit. Most of Defendant's products, however—including the bag purchased by Plaintiff on December 4, 2025—are almost always available at a purported sale price. And the proposed Class here includes only consumers who purchased products at a purported sale price (in other words, products included in Defendant's sales). This Complaint uses "Dooney & Bourke Products" or "Products" to refer to the majority of Dooney & Bourke Products that are not excluded from sales and are consistently on sale.

16. Plaintiff brings this case for herself and other California consumers who purchased Dooney & Bourke Products at a supposed discount.

## II. Parties

17. Plaintiff Sharon Manier is domiciled in Riverside, California.

18. The proposed Class includes citizens of California.

19. Defendant Dooney & Bourke Inc. is a Connecticut corporation with its principal place of business at 1 Regent Street, Norwalk, CT 06855.

## III. Jurisdiction and Venue.

20. This Court has subject matter jurisdiction under 28 U.S.C. § 1332(d)(2). The amount in controversy exceeds $5,000,000, exclusive of interest and costs, and the matter is a class action in which one or more members of the proposed Class are citizens of a state different from Defendant.

21. The Court has personal jurisdiction over Defendant because Defendant sold Dooney & Bourke Products to consumers in California, including to Plaintiff.

22. Venue is proper under 28 U.S.C. § 1391(b)(1), 28 U.S.C. § 1391(c)(2), and 28 U.S.C. § 1391(d) because Defendant is subject to personal jurisdiction in this District with respect to this action, and would be subject to personal jurisdiction in this District if this District were a separate state, given that Defendant sold Dooney & Bourke Products to consumers in California and this District, including to Plaintiff. Venue is also proper under 28 U.S.C. § 1391(b)(2) because a substantial part of Defendant's conduct giving rise to the claims occurred in this District, including Defendant's sale to Plaintiff.

## IV. Facts.

### A. Defendant's fake prices and fake discounts.

23. Defendant Dooney & Bourke manufactures, distributes, markets, and sells purses and other hand bags. Defendant sells its Products directly to consumers, including through its website, www.dooney.com.

24. Through its advertisements, Defendant creates the false impression that its Products' regular prices are higher than they truly are.

25. On the Website, Defendant advertises steep discounts on its Products. These discounts routinely offer "up to X%" off the listed regular prices that Defendant advertises. Defendant routinely advertises sales on its website home page (among other places, as shown below). Here are some examples:




*Captured on January 20, 2023*




*Captured on October 3, 2024*




*Captured on April 1, 2025*




*Captured on May 5, 2025*




*Captured on January 3, 2026*




*Captured on May 14, 2026*

26. In addition to the sales advertised on its home page, Defendant also regularly offers additional discounts. For example, on May 11, 2026, Defendant advertised a "Spring Sale" offering up to "40% off" on its home page:




*Captured on May 11, 2026*

27. That same day, Defendant also advertised several additional sales on its "Sale" page, including a "Disney X Dooney" sale offering "30%" off plus "an additional 10%" off of "Disney x Dooney & Bourke" Products for a "limited time."







28. In addition to advertising its promotions on its home page and Sale page, Defendant also advertises its promotions prominently on banners across its website, on search pages, on individual product pages, and at during the check-out process. Discounts are advertised both by promoting that consumers can save "Up to X%" and by showing Products' purported regular prices in strikethrough font next to the purported discounted price in red. For example:

Banners:




*Captured on January 6, 2024*




*Captured on June 20, 2024*




*Captured on September 24, 2025*

The Autumn Edit: Up to 50% Off. (Details)

*Captured on October 10, 2025*

Spring Fling: Up to 40% off your new favorites for the season ahead. (Details)

*Captured on March 8, 2026*

Mother's Day Sale: Up to 40% off, just in time for Mom. (Details)

*Captured on May 7, 2026*

<u>Search Pages</u>:




*Shop All Bags Page, Captured on May 7, 2026*




*Shop All Bags Page, Captured on May 11, 2026*

<u>Product Pages</u>:




*Captured on January 8, 2026*




*Captured on February 11, 2026*




*Captured on March 8, 2026*

Check Out:




*Captured on May 11, 2026*




*Captured on May 11, 2026*

29. Defendant represents that its advertised promotions are tied to a specific event or otherwise limited in time. But in reality, they are routinely available. For example, on May 7, 2026, Defendant advertised a "Mother's Day Sale" offering "Up to 40% Off":




30. The following Products were the first three Products listed on Defendant's "Shop All Bags" page on that day, and were each listed as available at a purported sale price pursuant to the sale:




31. To reasonable consumers, this advertising meant that the sale would end after Mother's Day (which fell on May 10, 2026), and that the Products available at a discount pursuant to

the sale—including the three shown above—would go back to retailing at their purported regular prices (the prices shown in strikethrough font). But, in truth, Defendant's advertised sales do not end when they are supposed to, and instead are replaced with the same, or materially similar, sales.

32. For example, on May 11, 2026, the day after Mother's Day, Defendant prominently advertised a "Spring Sale" offering "Up to 40% Off." And on that same day, the first three Products listed on Defendant's "Shop All Bags" page were the same as on May 7, 2026, and were listed with the exact same purportedly discounted prices:






33. Using these tactics, Defendant leads reasonable consumers to believe that Defendant's sales are only available for a limited time, but, as shown above, they continue constantly, and are continuously replaced by similar sales. So, the list (or strikethrough) prices Defendant advertises are not actually Defendant's regular prices, because Defendant's Products are consistently available for less than that. The purported discounts Defendant advertises are not the true discount the customer is receiving, and are often not a discount at all.

34. Defendant compounds the problem by using additional deceptive language on its Product pages. Those pages state that a Product was "[o]ffered at $X"—the list or strikethrough price—"starting in" a particular month and year. For example, on May 11, 2026, the "Sorrento Crossbody Hobo 22" was listed with a purported regular price of $268.00 and a purported discount price of $128.00. And on the Product page, Defendant included language stating that the Product was "[o]ffered at $268.00 starting in October 2024":




*Captured on May 11, 2026*

35. To reasonable consumers, this additional language further conveys that the list price in strikethrough font is the regular and ordinary price at which Defendant offers its products when they are not on sale, and that that price was long-standing. For example, a reasonable consumer reviewing the product page for the Sorrento Crossbody Hobo 22 would interpret the statement

"offered at $268 starting in October 2024" to mean that, from October 2024 to May 2026—i.e., over a period of 19 months—Defendant regularly offered the Sorrento Crossbody Hobo 22 for sale to consumers at the price of $268, with at most occasional time-limited discounts for short periods. This further conveys to reasonable consumers that the opportunity to buy the Product at a discount for just $128.00 is a great deal. In truth, however, as explained above, after Defendant introduces a Product, Defendant routinely starts offering constant and ongoing discounts on the Product, often within a month or less of that product being first introduced.

36. For example, according to Defendant, Defendant's "Saffiano Janine 35" was "[o]ffered at $328.00 starting in December 2025." But by January 6, 2026, the Product was on sale for "$179.00":




*Captured on January 6, 2026*

37. As a second example, according to Defendant, Defendant's "Pebble Grain Satchel 28" was "[o]ffered at $288.00 starting in March 2026." But by April 1, 2026, the Product was on sale for "$169.00":




*Captured May 15, 2026*




*Captured April 1, 2026*

38. Notably, the language does not truthfully state that the Product was only sold for the list price for a short specified timeframe, or that the Product is occasionally offered at the identified price but usually retails for half as much. Instead, it conveys the opposite: that "starting" in a certain month, and thereafter, the product was offered at the list price, when in fact that's not true.

39. Consumers' reasonable beliefs are further reinforced by Defendant routinely including the name of an active sale above the list and discounted price of a Product. For example, for the "Sorrento Crossbody Hobo 22" Product, reasonable consumers would reasonably understand from the Product Page that the Product has a regular price of $268.00 but was available for a discounted price of $128.00 because of the "Spring Sale." Similarly, a reasonable consumer would reasonably understand that before the "Spring Sale" started, and after it ended, the Product was not available at a discount, and consumers had to pay (and would have to pay again) the full list price of $268.




40. To determine whether Defendant's Products are consistently available at a discount, and thus not regularly sold at the listed regular prices, Plaintiff's counsel's law firm tracked the prices of three of Defendant's Products over a several month period: the "Saffiano Janine 35," the "Penrose Drawstring 25," and the "Sorrento Satchel 30 With Pocket."

41. Plaintiff's counsel's law firm visited the Product Page for the "Saffiano Janine 35" on fifty-nine randomly selected dates from January 6, 2026 to April 16, 2026. And during each of those

visits, the Product was advertised as on sale from the purported regular price. An example from January 6, 2026 is shown below:




42. And, as the chart below shows, the Product was listed with a purported discount price and a substantially higher purported regular price on every other date reviewed, too:

| Date | Purported Regular Price | Purported Discount Price |
|---|---|---|
| January 8, 2026 | $328 | $179 |
| January 12, 2026 | $328 | $179 |
| January 13, 2026 | $328 | $179 |
| January 14, 2026 | $328 | $179 |
| January 15, 2026 | $328 | $179 |
| January 16, 2026 | $328 | $179 |
| January 20, 2026 | $328 | $179 |
| January 21, 2026 | $328 | $179 |
| January 22, 2026 | $328 | $179 |
| January 23, 2026 | $328 | $179 |
| January 26, 2026 | $328 | $179 |
| January 27, 2026 | $328 | $179 |
| January 28, 2026 | $328 | $179 |
| January 29, 2026 | $328 | $179 |

| | | |
|---|---|---|
| January 30, 2026 | $328 | $179 |
| February 2, 2026 | $328 | $179 |
| February 3, 2026 | $328 | $179 |
| February 4, 2026 | $328 | $179 |
| February 5, 2026 | $328 | $179 |
| February 6, 2026 | $328 | $179 |
| February 9, 2026 | $328 | $179 |
| February 10, 2026 | $328 | $179 |
| February 11, 2026 | $328 | $179 |
| February 12, 2026 | $328 | $179 |
| February 13, 2026 | $328 | $179 |
| February 17, 2026 | $328 | $179 |
| February 18, 2026 | $328 | $179 |
| February 19, 2026 | $328 | $179 |
| February 20, 2026 | $328 | $179 |
| February 23, 2026 | $328 | $179 |
| February 24, 2026 | $328 | $179 |
| February 25, 2026 | $328 | $179 |
| February 26, 2026 | $328 | $179 |
| February 27, 2026 | $328 | $179 |
| March 2, 2026 | $328 | $179 |
| March 3, 2026 | $328 | $179 |
| March 4, 2026 | $328 | $179 |
| March 5, 2026 | $328 | $179 |
| March 6, 2026 | $328 | $179 |
| March 9, 2026 | $328 | $179 |
| March 11, 2026 | $328 | $179 |
| March 13, 2026 | $328 | $159 |

| | | |
|---|---|---|
| March 16, 2026 | $328 | $159 |
| March 18, 2026 | $328 | $159 |
| March 20, 2026 | $328 | $159 |
| March 24, 2026 | $328 | $159 |
| March 25, 2026 | $328 | $159 |
| March 26, 2026 | $328 | $159 |
| March 27, 2026 | $328 | $159 |
| March 30, 2026 | $328 | $159 |
| April 1, 2026 | $328 | $179 |
| April 3, 2026 | $328 | $179 |
| April 6, 2026 | $328 | $179 |
| April 8, 2026 | $328 | $179 |
| April 13, 2026 | $328 | $179 |
| April 14, 2026 | $328 | $179 |
| April 15, 2026 | $328 | $179 |
| April 16, 2026 | $328 | $179 |

43. Similarly, Plaintiff's counsel's law firm visited the Product Page for the "Penrose Drawstring 25" on sixteen randomly selected dates from January 6, 2026 to February 27, 2026. And on each of those visits, the Product was advertised as on sale from the purported regular price. An example from January 6, 2026 is shown below:




44. And, as the chart below shows, the Product was listed with a purported discount price and a substantially higher purported regular price on every other date reviewed, too:

| Date | Purported Regular Price | Purported Discount Price |
|---|---|---|
| January 8, 2026 | $265 | $149 |
| January 12, 2026 | $265 | $149 |
| January 13, 2026 | $265 | $149 |
| January 14, 2026 | $265 | $149 |
| January 15, 2026 | $265 | $149 |
| January 16, 2026 | $265 | $149 |
| January 20, 2026 | $265 | $149 |
| January 21, 2026 | $265 | $149 |
| January 22, 2026 | $265 | $149 |
| January 23, 2026 | $265 | $149 |
| January 26, 2026 | $265 | $149 |
| January 28, 2026 | $265 | $149 |
| February 4, 2026 | $265 | $149 |
| February 13, 2026 | $265 | $149 |
| February 27, 2026 | $265 | $149 |

45. Finally, Plaintiff's counsel's law firm visited the Product Page for the "Sorrento Satchel 30 With Pocket" on thirty-five randomly selected dates from June 29, 2026 to August 18, 2026. And on each of those visits, the Product was advertised as on sale from the purported regular price. An example from June 29, 2026 is shown below:




46. And, as the chart below shows, the Product was listed with a purported discount price and a substantially higher purported regular price on every other date reviewed, too:

| Date | Purported Regular Price | Purported Discount Price |
|---|---|---|
| June 30, 2026 | $398 | $198 |
| July 1, 2026 | $398 | $198 |
| July 2, 2026 | $398 | $198 |
| July 6, 2026 | $398 | $198 |
| July 7, 2026 | $398 | $198 |
| July 8, 2026 | $398 | $198 |
| July 9, 2026 | $398 | $198 |
| July 10, 2026 | $398 | $198 |
| July 13, 2026 | $398 | $198 |
| July 14, 2026 | $398 | $198 |
| July 15, 2026 | $398 | $198 |

| | | |
|---|---|---|
| July 16, 2026 | $398 | $198 |
| July 17, 2026 | $398 | $198 |
| July 20, 2026 | $398 | $198 |
| July 21, 2026 | $398 | $198 |
| July 22, 2026 | $398 | $198 |
| July 23, 2026 | $398 | $198 |
| July 24, 2026 | $398 | $198 |
| July 28, 2026 | $398 | $198 |
| July 29, 2026 | $398 | $198 |
| July 30, 2026 | $398 | $198 |
| July 31, 2026 | $398 | $198 |
| August 3, 2026 | $398 | $198 |
| August 4, 2026 | $398 | $198 |
| August 5, 2026 | $398 | $198 |
| August 6, 2026 | $398 | $198 |
| August 7, 2026 | $398 | $198 |
| August 10, 2026 | $398 | $198 |
| August 11, 2026 | $398 | $198 |
| August 12, 2026 | $398 | $198 |
| August 13, 2026 | $398 | $198 |
| August 14, 2026 | $398 | $198 |
| August 17, 2026 | $398 | $198 |
| August 18, 2026 | $398 | $198 |

47. In addition, the continuing nature of Defendant's purported sales is shown by Google Shopping data (which shows the "typical" price for products "over the past 12 months"). Google Shopping data shows that most Dooney & Bourke Products are typically sold at prices far below the advertised regular prices on Defendant's website.

48. For example, as of Sptember 8, 2026, Defendant's website listed the Product Plaintiff purchased on December 4, 2025—the Sweety Leather Crossbody Hobo—with a purported regular price of $208.00, and a discounted price of $99.00, the price Plaintiff paid for the Product.[2] Google Shopping data shows that this Product is "[t]ypically" sold for "$99," which is the exact purportedly discounted price Plaintiff paid, and nowhere near Defendant's advertised regular price of $208. Google Shopping data also provides a chart tracking the price "over the past 12 months." It shows that Dooney & Bourke never offered or sold the Product for the purported regular price in the year prior to September 8, 2026:




49. To further investigate the discounting practices of Defendant, Plaintiff's counsel's law firm searched for Products offered by Dooney & Bourke on Google Shopping on May 7, 2026, and reviewed the prices of the first 25 listed Products. On that day, 84% of the Products had typical prices below Defendant's purported regular prices.

[2] As of September 8, 2026, the Product was listed as "out of stock" on Defendant's website, but still shown with a discounted price.

50. Thus, historical evidence about Defendant's pricing practices demonstrates that the list prices that Defendant advertises are not actually Defendant's former or regular prices.

51. Reasonable consumers do not realize the fake nature of the advertised sales. It is not apparent from merely purchasing the Products, because the sales appear to be bona fide sales. Consumers do not have any reason to go back to the website day after day to discover that there is still a sale. And, even a consumer who occasionally checks the website would reasonably believe that there happened to be another sale—especially when Defendant changes the names of its sales despite offering the same or a similar discount. Discovering Defendant's deception required extensive mining of internet archives, which revealed that the sales are not limited in time as advertised, that the discounts are fake, and that the advertised regular prices are fake.

52. Using the tactics described above, Defendant leads reasonable consumers to believe that they will get a discount on the Products they are purchasing if they purchase during the limited-time promotion. In other words, it leads reasonable consumers to believe that if they buy now, they will get a Product worth X at a discounted, lower price Y. This creates a sense of urgency: buy now, and you will receive something worth more than you pay for it; wait, and you will pay more for the same thing later.

53. Based on Defendant's advertisements, reasonable consumers reasonably believe that the list prices Defendant advertises are Defendant's regular prices and former prices (that is, the prices at which the goods were actually offered for sale on Defendant's website right before the limited-time offer went into effect). In other words, reasonable consumers reasonably believe that the list prices Defendant advertises represent the amount that consumers formerly had to pay on Defendant's website for Defendant's goods, before the sale began, and will again have to pay for Defendant's goods when the sale ends. Said differently, reasonable consumers reasonably believe that, prior to the supposedly time-limited sale, and after the sale ends, consumers buying from Defendant on its website had to (or will have to) pay the list price to get the item and did not (or will not) have the opportunity to get a discount from that list price.

54. Reasonable consumers also reasonably believe that the list prices Defendant advertises represent the true market value of the Products, and that they are receiving reductions

from the listed regular prices in the amounts advertised. In truth, however, Defendant consistently offers discounts off the purported regular prices it advertises. As a result, everything about Defendant's price and purported discount advertising is false. The list prices Defendant advertises are not actually Defendant's regular or former prices (or the prevailing prices for the Products Defendant sells). And, the list prices do not represent the true market value for the Products, because Defendant's Products are routinely available for less than that on Defendant's website, and customers did not have to formerly pay that amount to get those items. The purported discounts Defendant advertises are not the true discount the customer is receiving, and are often not a discount at all. Nor are the purported discounts limited-time—quite the opposite, they are constantly available.

**B. Defendant's purported regular prices were not the prevailing prices during the 90 days immediately preceding Defendant's advertisement of the purported discounts.**

55. As explained above, Defendant sells its Dooney & Bourke Products through its website, www.dooney.com. Some Dooney & Bourke Products are also available through some third-party websites and retailers.

56. Dooney & Bourke Products that are available from third-party websites and retailers are regularly available for prices well below Defendant's listed regular prices. As discussed above, Plaintiff's counsel reviewed the "typical" prices for Dooney & Bourke Products using Google Shopping on May 7, 2026. And Google Shopping data "is based on stores across the web over the past 12 months"—meaning it reviews products' prices not just on Dooney & Bourke's website, but "across the web." And, as described above, the vast majority of the Products reviewed had "typical" prices below Defendant's purported regular prices.

57. So, as the Google Shopping results show, Defendant's Products are typically sold by other retailers for less than the purported regular prices that Defendant's website advertises, too. This is not surprising, as prices charged on third-party websites and by third-party retailers typically converge on Defendant's price, especially since the Products are sold in an e-commerce market and

Defendant, the manufacturer, sells the Products directly to consumers through its publicly available website.

58. Moreover, regardless of third-party retailers' prices, Dooney & Bourke Products are largely sold by Dooney & Bourke. If consumers are searching for a Dooney & Bourke Product, they will go to the Dooney & Bourke website. For example, if a consumer Googles "Dooney & Bourke Bags" the first result will be dooney.com. So, because the Dooney & Bourke Products are most commonly sold by Dooney & Bourke, they are most commonly sold for the discounted prices routinely available from Dooney & Bourke.

**C. Defendant's advertisements are unfair, deceptive, and unlawful.**

59. Section 17500 of California's False Advertising Law prohibits businesses from making statements they know or should know to be untrue or misleading. Cal. Bus. & Prof. Code § 17500. This includes statements falsely suggesting that a product is on sale, when it actually is not.

60. Moreover, section 17501 of California's False Advertising Law specifically provides that "[n]o price shall be advertised as a former price … unless the alleged former price was the prevailing market price … within three months next immediately preceding" the advertising. Cal. Bus. & Prof. Code § 17501.

61. In addition, California's Consumer Legal Remedies Act prohibits "advertising goods or services with intent not to sell them as advertised" and specifically prohibits "false or misleading statements of fact concerning reasons for, existence of, or amounts of price reductions." Cal. Civ. Code § 1770(a)(9), (13).

62. In addition, the Federal Trade Commission's regulations prohibit false or misleading "former price comparisons," for example, making up "an artificial, inflated price … for the purpose of enabling the subsequent offer of a large reduction" off that price. 16 C.F.R. § 233.1. They also prohibit false or misleading "retail price comparisons" and "comparable value comparisons," for example ones that falsely suggest that the seller is "offer[ing] goods at prices lower than those being charged by others for the same merchandise" when this is not the case. 16 C.F.R. § 233.2.

63. And finally, California's Unfair Competition Law bans unlawful, unfair, and deceptive business practices. *See* Cal. Bus. & Prof. Code § 17200.

64. Here, as described in detail above, Defendant makes untrue and misleading statements about its prices. Defendant advertises regular prices that are not its true regular prices, or its former prices, and were not the prevailing market price in the three months immediately preceding the advertisement. In addition, Defendant advertises goods or services with the intent not to sell them as advertised, for example, by advertising goods having certain former prices and/or market values without the intent to sell goods having those former prices and/or market values. Defendant makes false or misleading statements of fact concerning the reasons for, existence of, and amounts of price reductions, including the existence of steep discounts, and the amounts of price reductions resulting from those discounts. And Defendant engages in unlawful, unfair, and deceptive business practices.

**D. Defendant's advertisements harm consumers.**

65. Based on Defendant's advertisements, reasonable consumers would expect that the list prices Defendant advertises are the regular prices at which Defendant usually sells its Products, that these are former prices that Defendant sold its Products at before the temporary discount was introduced, and that they are the prevailing market prices for the Products.

66. Reasonable consumers also expect that, if they purchase during the sale, they will receive an item whose regular price and/or market value is the advertised list price and that they will receive the advertised discount from the regular purchase price.

67. In addition, consumers are more likely to buy the product if they believe that the product is on sale and that they are getting a product with a higher regular price and/or market value at a substantial discount.

68. Consumers that are presented with discounts are substantially more likely to make the purchase. "Nearly two-thirds of consumers surveyed admitted that a promotion or a coupon often closes the deal, if they are wavering or are undecided on making a purchase."[3] And, "two-thirds of consumers have made a purchase they weren't originally planning to make solely based on finding a

[3] https://www.invespcro.com/blog/how-discounts-affect-online-consumer-buying-behavior/.

coupon or discount," while "80% [of consumers] said they feel encouraged to make a first-time purchase with a brand that is new to them if they found an offer or discount."[4]

69. Similarly, when consumers believe that an offer is expiring soon, the sense of urgency makes them more likely to buy a product.[5]

70. Thus, Defendant's false advertising harms consumers by depriving them of their reasonable expectations. Moreover, Defendant's advertisements harm consumers by inducing them to make purchases based on false information. In addition, by this same mechanism, Defendant's advertisements artificially increase consumer demand for Defendant's Products. This puts upward pressure on the prices that Defendant can charge for its Products. As a result, Defendant can charge a price premium for its Products, that it would not be able to charge absent the misrepresentations described above. So, due to Defendant's misrepresentations, Plaintiff and the Class paid more for the Products they bought than they otherwise would have.

**E. Plaintiff was misled by Defendant's misrepresentations.**

71. Plaintiff Sharon Manier has purchased multiple products from Dooney & Bourke. For example, on December 4, 2025, Ms. Manier purchased a Sweety Leather Crossbody Hobo from Defendant's website, www.dooney, while living in Riverside, California.

72. At the time she made her purchase, Defendant's website was advertising multiple substantial, time-limited sales. For example, Defendant's website was advertising a "12 Days of Dooney" sale offering "hundreds of styles up to 70% off":

[4] RetailMeNot Survey: Deals and Promotional Offers Drive Incremental Purchases Online, Especially Among Millennial Buyers (prnewswire.com).

[5] https://cxl.com/blog/creating-urgency/ (addition of a countdown timer increased conversion rates from 3.4%-10%); Dynamic email content leads to 400% increase in conversions for Black Friday email | Adestra (uplandsoftware.com) (400% higher conversation rate for ad with countdown timer).




73. As part of that promotion, Defendant advertised a specific sale on the Sweety Leather Crossbody Hobo, advertising that the Product was available for "just $99," and emphasizing that the sale was "today only!":




74. Pursuant to that sale, Ms. Manier purchased the Product, which was listed with a specific regular price in strikethrough font, and a purportedly discounted price of $99 (plus shipping and taxes).

75. Prior to making her purchase, Ms. Manier reviewed Defendant's website and saw that Defendant was advertising substantial discounts. Ms. Manier read and relied on the representations on Defendant's website, including that the Product had the regular price listed on the website in strikethrough font, but was being offered at a specific discount and price reduction from that regular price, and that the sale was time-limited. Based on Defendant's representations described above, Plaintiff reasonably understood that Defendant usually (and formerly, before the promotion Defendant was advertising) sold the Product she was purchasing at the published regular price (shown in strikethrough font), that the regular price was the market value of the Product that she was buying, that she was receiving the advertised discount as compared to the regular price, that the advertised discount was only available for a limited time (during the "today only!" temporary promotion), and that the Product would go back to retailing for the published regular price when the promotion ended. She would not have made the purchase, at the price she paid, if she had known that the Product was not discounted as advertised, and that she would not be receiving the advertised discount.

76. In truth, as explained above, Dooney & Bourke Products, including the Product purchased by Ms. Manier, are regularly available at a discount from the purported regular prices. So, Defendant did not regularly sell the Product that Plaintiff purchased at the purported regular price, and the Product was not discounted as advertised. Plus, the sale was not temporary—the Product is regularly on sale.

77. Plaintiff faces an imminent threat of future harm. She would purchase additional Dooney & Bourke Products in the future if she could feel sure that Defendant's regular prices accurately reflected Defendant's former prices and the market value of the Products, and that its discounts were truthful. But without an injunction, Plaintiff has no realistic way to know which—if any—of Defendant's regular prices, discounts, and sales are not false or deceptive. For example, while she could watch Defendant's website for a sale on the day that it is supposed to end to see if the sale is permanent, doing so could result in missing out on the sale (*e.g.*, if the sale is actually limited in time, and not permanent). Accordingly, Plaintiff is unable to rely on Defendant's advertising in the future, and so she cannot purchase the Products that she would like to purchase.

**F. Defendant breached its contract with and warranties to Plaintiff and the putative Class.**

78. When Ms. Manier, and other members of the putative Class, purchased and paid for the Dooney & Bourke Products they bought as described above, they accepted offers that Defendant made, and thus, a contract was formed each time that they made purchases. Each offer was to provide Products having a particular listed regular price and market value (equal to the list price shown in strikethrough font), and to provide those Products at the discounted prices advertised on the website.

79. Defendant's advertisements on its website list the market value of the items that Defendant promised to provide. Defendant agreed to provide a discount equal to the difference between the regular prices, and the prices paid by Plaintiff and putative Class.

80. Defendant also warranted that the regular price and market value of the Product Plaintiff purchased was the advertised list price and warranted that Plaintiff was receiving a specific discount on the Product (off of the regular price).

81. The regular prices and market values of the items Ms. Manier and putative Class members would receive, and the amount of the discounts they would be provided off the regular prices of those items, were specific and material terms of the contract. They were also affirmations of fact about the Products and a promise relating to the goods.

82. Ms. Manier and other members of the putative Class performed their obligations under the contract by paying for the items they purchased.

83. Defendant breached its contract by failing to provide Ms. Manier and other members of the putative Class with Products that have regular prices and market values equal to the regular prices displayed, and by failing to provide the discounts it promised. Defendant also breached warranties for the same reasons.

**G. No adequate remedy at law.**

84. Plaintiff seeks damages and, in the alternative, restitution. Plaintiff is permitted to seek equitable remedies in the alternative because she has no adequate remedy at law.

85. A legal remedy is not adequate if it is not as certain as an equitable remedy. The elements of Plaintiff's equitable claims are different and do not require the same showings as Plaintiff's legal claims. For example, Plaintiff's FAL claim under Section 17501 (an equitable claim) is predicated on a specific statutory provision, which prohibits advertising merchandise using a former price if that price was not the prevailing market price within the past three months. Cal. Bus. & Prof. Code § 17501. Plaintiff may be able to prove these more straightforward factual elements, and thus prevail under the FAL, while not being able to prove one or more elements of his legal claims. As a second example, to obtain damages under the CLRA, a plaintiff must show that they complied with the CLRA's notice requirement for damages. No such requirements exist to obtain restitution. Because a plaintiff must make this additional showing to obtain damages, rather than restitution, the legal remedies are more uncertain.

86. In addition, to obtain a full refund as damages, Plaintiff must show that the Product she bought has essentially no market value. In contrast, Plaintiff can seek restitution without making this showing. This is because Plaintiff purchased a Product that she would not otherwise have

purchased, but for Defendant's representations. Obtaining a full refund at law is less certain than obtaining a refund in equity.

87. Furthermore, the remedies at law available to Plaintiff are not equally prompt or otherwise efficient. The need to schedule a jury trial may result in delay. And a jury trial will take longer, and be more expensive, than a bench trial.

88. Finally, legal damages are inadequate to remedy the imminent threat of future harm that Plaintiff faces. Only an injunction can remedy this threat of future harm. Plaintiff would purchase or consider purchasing Products from Defendant again in the future if she could feel sure that Defendant's regular prices accurately reflected Defendant's former prices and the market value of the Products, and that its discounts were truthful. But without an injunction, Plaintiff has no realistic way to know which—if any—of Defendant's regular prices, discounts, and sales are not false or deceptive. Thus, Plaintiff is unable to rely on Defendant's advertising in the future, and so cannot purchase the Dooney & Bourke Products she would like to purchase.

**V. Class action allegations.**

89. Plaintiff brings the asserted claims on behalf of the proposed Class of:

- All persons who, while residing in the State of California and within the applicable statute of limitations period, purchased one or more Dooney & Bourke Products advertised at a discount on Defendant's website, dooney.com.

90. The following people are excluded from the Class: (1) any Judge or Magistrate Judge presiding over this action and the members of their family; (2) Defendant, Defendant's subsidiaries, parents, successors, predecessors, and any entity in which the Defendant or its parents have a controlling interest and their current employees, officers, and directors; (3) persons who properly execute and file a timely request for exclusion from the Class; (4) persons whose claims in this matter have been finally adjudicated on the merits or otherwise released; (5) Plaintiff's counsel and Defendant's counsel, and their experts and consultants; and (6) the legal representatives, successors, and assigns of any such excluded persons.

***Numerosity & Ascertainability***

91. The proposed Class contains members so numerous that separate joinder of each member of the Class is impractical. There are tens or hundreds of thousands of Class members.

92. Class members can be identified through Defendant's sales records and public notice.

***Predominance of Common Questions***

93. There are questions of law and fact common to the proposed Class. Common questions of law and fact include, without limitation:

(1) whether Defendant made false or misleading statements of fact in its advertisements;

(2) whether Defendant violated California's consumer protection statutes;

(3) whether Defendant committed a breach of contract;

(4) whether Defendant committed a breach of an express warranty;

(5) damages needed to reasonably compensate Plaintiff and the proposed Class.

***Typicality & Adequacy***

94. Plaintiff's claims are typical of the proposed Class. Like the proposed Class, Plaintiff purchased the Dooney & Bourke Products advertised at a discount from Defendant. There are no conflicts of interest between Plaintiff and the Class.

***Superiority***

95. A class action is superior to all other available methods for the fair and efficient adjudication of this litigation because individual litigation of each claim is impractical. It would be unduly burdensome to have individual litigation of millions of individual claims in separate lawsuits, every one of which would present the issues presented in this lawsuit.

## VI. Claims.

### First Cause of Action:

### Violation of California's False Advertising Law Bus. & Prof. Code §§ 17500 & 17501 et. seq.

### (By Plaintiff and the Class)

96. Plaintiff incorporates each and every factual allegation set forth above.

97. Plaintiff brings this cause of action on behalf of herself and members of the Class.

98. Defendant has violated sections 17500 and 17501 of the Business and Professions Code.

99. Defendant has violated, and continues to violate, section 17500 of the Business and Professions Code by disseminating untrue and misleading advertisements to Plaintiff and Class members.

100. As alleged more fully above, Defendant advertises former prices along with discounts. Defendant does this, for example, by crossing out a higher price (*e.g.*, ~~$238~~) and displaying it next to a lower, discounted price. Reasonable consumers would understand prices advertised in strikethrough font from which discounts are calculated to denote "former" prices (i.e., the prices that Defendant charged before a temporary discount went into effect.).

101. The prices advertised by Defendant are not Defendant's regular prices. Those prices are not Defendant's regular prices (i.e., the price you usually have to pay to get the Product in question), because Defendant routinely offers the Products at purportedly discounted prices. Moreover, for the same reasons, those prices were not the former prices of the Products. Accordingly, Defendant's statements about the former prices of its Products, and its statements about its discounts from those former prices, were untrue and misleading. In addition, Defendant's statements that its discounts are limited in time (such as representations that a sale is connected to a specific event or will end on a specific date) are false and misleading too.

102. In addition, Defendant has violated, and continues to violate, section 17501 of the Business and Professions Code by advertising former prices that were not the prevailing market price within three months next immediately preceding the advertising. As explained above, Defendant's advertised regular prices, which reasonable consumers would understand to denote former prices, were not the prevailing market prices for the Products within three months preceding publication of the advertisement. And Defendant's former price advertisements do not state clearly, exactly, and conspicuously when the former prices prevailed.

103. Defendant's misrepresentations were intended to induce reliance, and Plaintiff saw, read, and reasonably relied on the statements when purchasing Dooney & Bourke Products. Defendant's misrepresentations were a substantial factor in Plaintiff's purchase decision.

104. In addition, Class -wide reliance can be inferred because Defendant's misrepresentations were material (i.e., a reasonable consumer would consider them important in deciding whether to buy the Dooney & Bourke Products).

105. Defendant's misrepresentations were a substantial factor and proximate cause in causing damages and losses to Plaintiff and the Class .

106. Plaintiff and the Class were injured as a direct and proximate result of Defendant's conduct because (a) they would not have purchased Dooney & Bourke Products if they had known the truth, (b) they overpaid for the Products because the Products were sold at a price premium due to the misrepresentation, and/or (c) they did not receive the discounts they were promised, and received Products with market values lower than the promised market values.

107. For the claims under California's False Advertising Law, Plaintiff seeks all available equitable relief, including injunctive relief, disgorgement, and restitution in the form of a full refund and/or measured by the price premium charged to Plaintiff and the Class as a result of Defendant's unlawful conduct.

**Second Cause of Action:**

**Violation of California's Consumer Legal Remedies Act**

**(by Plaintiff and the Class)**

108. Plaintiff incorporates each and every factual allegation set forth above.

109. Plaintiff brings this cause of action on behalf of herself and members of the Class.

110. Plaintiff and the Class are "consumers," as the term is defined by California Civil Code § 1761(d).

111. Plaintiff and the Class have engaged in "transactions" with Defendant as that term is defined by California Civil Code § 1761(e).

112. The conduct alleged in this Complaint constitutes unfair methods of competition and unfair and deceptive acts and practices for the purpose of the CLRA, and the conduct was undertaken by Defendant in transactions intended to result in, and which did result in, the sale of goods to consumers.

113. As alleged more fully above, Defendant made and disseminated untrue and misleading statements of facts in its advertisements to Class members. Defendant did this by using fake regular prices, i.e., regular prices that are not the prevailing prices, and by advertising fake discounts.

114. Defendant violated, and continues to violate, section 1770 of the California Civil Code.

115. Defendant violated, and continues to violate, section 1770(a)(5) of the California Civil Code by representing that Products offered for sale have characteristics or benefits that they do not have. Defendant represents that the value of its Products is greater than it actually is by advertising inflated regular prices and fake discounts for Products.

116. Defendant violated, and continues to violate, section 1770(a)(9) of the California Civil Code. Defendant violates this by advertising its Products as being offered at a discount, when in fact Defendant does not intend to sell the Products at a discount.

117. And Defendant violated, and continues to violate section 1770(a)(13) by making false or misleading statements of fact concerning reasons for, existence of, or amounts of, price reductions on its website, including by (1) misrepresenting the regular price of its Products, (2) advertising discounts and savings that are exaggerated or nonexistent, (3) misrepresenting that the discounts and savings are unusually large, when in fact they are regularly available, and (4) misrepresenting the reason for the sale (*e.g.*, "Mother's Day Sale," when in fact the sale is ongoing and not limited to Mother's Day).

118. Defendant's representations were likely to deceive, and did deceive, Plaintiff and reasonable consumers. Defendant knew, or should have known through the exercise of reasonable care, that these statements were inaccurate and misleading.

119. Defendant's misrepresentations were intended to induce reliance, and Plaintiff saw, read, and reasonably relied on them when purchasing Dooney & Bourke Products. Defendant's misrepresentations were a substantial factor in Plaintiff's purchase decision.

120. In addition, Class-wide reliance can be inferred because Defendant's misrepresentations were material, i.e., a reasonable consumer would consider them important in deciding whether to buy the Dooney & Bourke Products.

121. Defendant's misrepresentations were a substantial factor and proximate cause in causing damages and losses to Plaintiff and the Class.

122. Plaintiff and the Class were injured as a direct and proximate result of Defendant's conduct because (a) they would not have purchased Dooney & Bourke Products if they had known the discounts and/or regular prices were not real, (b) they overpaid for the Products because the Products were sold at a price premium due to the misrepresentation, and/or (c) they did not receive the discounts they were promised, and received products with market values lower than the promised market values.

123. Accordingly, pursuant to California Civil Code § 1780(a)(2), Ms. Manier, on behalf of herself and all other members of the Class, seeks injunctive relief.

124. CLRA § 1782 NOTICE. On September 14, 2026, a CLRA demand letter was sent to Defendant's headquarters and California registered agent via certified mail (return receipt requested). The letter provided notice of Defendant's violations of the CLRA and demanded that Defendant correct the unlawful, unfair, false and/or deceptive practices alleged here. Defendant does not have a California headquarters. If Defendant does not fully correct the problem for Plaintiff and for each member of the Class within 30 days of receipt, Plaintiff and the Class will seek all monetary relief allowed under the CLRA.

125. A CLRA venue declaration is attached.

**<u>Third Cause of Action</u>:**

**Violation of California's Unfair Competition Law**

**(by Plaintiff and the Class)**

126. Plaintiff incorporates each and every factual allegation set forth above.

127. Plaintiff brings this cause of action on behalf of herself and members of the Class.

128. Defendant has violated California's Unfair Competition Law (UCL) by engaging in unlawful, fraudulent, and unfair conduct (i.e., violating each of the three prongs of the UCL).

***The Unlawful Prong***

129. Defendant engaged in unlawful conduct by violating the CLRA and FAL, as alleged above and incorporated here. In addition, Defendant engaged in unlawful conduct by violating the FTCA. The FTCA prohibits "unfair or deceptive acts or practices in or affecting commerce" and prohibits the dissemination of false advertisements. 15 U.S.C. § 45(a)(1), 15 U.S.C. § 52(a). As the FTC's regulations make clear, Defendant's false pricing schemes violate the FTCA. 16 C.F.R. § 233.1, 16 C.F.R. § 233.2.

***The Deceptive Prong***

130. As alleged in detail above, Defendant's representations that its Products were on sale, that the sales are limited in time, that the Products had a specific regular price, and that the customers were receiving specific discounts off the regular prices were false and misleading.

131. Defendant's representations were misleading to Plaintiff and other reasonable consumers.

132. Plaintiff relied upon Defendant's misleading representations and omissions, as detailed above.

***The Unfair Prong***

133. As alleged in detail above, Defendant committed "unfair" acts by falsely advertising that its Products were on sale, that the sales were limited in time, that the Products had a specific regular price, and that the customers were receiving specific discounts.

134. Defendant violated established public policy by violating the CLRA, the FAL, and the FTCA, as alleged above and incorporated here. The unfairness of this practice is tethered to a legislatively declared policy (that of the CLRA, FAL, and FTCA).

135. The harm to Plaintiff and the Class greatly outweighs the public utility of Defendant's conduct. There is no public utility to misrepresenting the price of a consumer product. This injury was not outweighed by any countervailing benefits to consumers or competition. Misleading consumer products only injure healthy competition and harm consumers.

136. Plaintiff and the Class could not have reasonably avoided this injury. As alleged above, Defendant's representations were deceptive to reasonable consumers like Plaintiff.

137. Defendant's conduct, as alleged above, was immoral, unethical, oppressive, unscrupulous, and substantially injurious to consumers.

* * *

138. For all prongs, Defendant's representations were intended to induce reliance, and Plaintiff saw, read, and reasonably relied on them when purchasing Dooney & Bourke Products. Defendant's representations were a substantial factor in Plaintiff's purchase decision.

139. In addition, Class-wide reliance can be inferred because Defendant's representations were material, i.e., a reasonable consumer would consider them important in deciding whether to buy Dooney & Bourke Products.

140. Defendant's representations were a substantial factor and proximate cause in causing damages and losses to Plaintiff and the Class members.

141. Plaintiff and the Class were injured as a direct and proximate result of Defendant's conduct because (a) they would not have purchased the Products if they had known the discounts and/or regular prices were not real, (b) they overpaid for the Products because the Products were sold at a price premium due to the misrepresentation, and/or (c) they did not receive the discounts they were promised, and received products with market values lower than the promised market values.

142. For the claims under California's Unfair Competition Law, Plaintiff seeks all available equitable relief, including injunctive relief, disgorgement, and restitution in the form of a full refund and/or measured by the price premium charged to Plaintiff and the Class as a result of Defendant's unlawful conduct.

**<u>Fourth Cause of Action</u>:**

**Breach of Contract**

**(by Plaintiff and the Class)**

143. Plaintiff incorporates each and every factual allegation set forth above.

144. Plaintiff brings this cause of action on behalf of herself and the Class.

145. Plaintiff and Class members entered into contracts with Defendant when they placed orders to purchase Defendant's Products.

146. The contracts provided that Plaintiff and Class members would pay Defendant for the Products purchased.

147. The contracts further required that Defendant provide Plaintiff and Class members with Products that have a market value equal to the advertised list prices displayed on the website. They also required that Defendant provide Plaintiff and Class members with the discount advertised. These were specific and material terms of the contract.

148. The specific discounts were a specific and material term of each contract, and were displayed to Plaintiff and Class members at the time they placed their orders.

149. Plaintiff and Class members paid Defendant for the Products they purchased, and satisfied all other conditions of their contracts.

150. Defendant breached its contracts with Plaintiff and Class members by failing to provide Products that had a market value equal to the list price, and by failing to provide the promised discount. Dooney & Bourke did not provide the discount that it had promised.

151. Plaintiff provided Defendant with notice of this breach of contract, by mailing a notice letter to Defendant's headquarters and registered agent, on September 14, 2026.

152. As a direct and proximate result of Defendant's breaches, Plaintiff and Class members were deprived of the benefit of their bargained-for exchange, and have suffered damages in an amount to be established at trial.

153. For the breach of contract claims, Plaintiff seeks all damages available including expectation damages and/or damages measured by the price premium charged to Plaintiff and the other Class members as a result of Defendant's unlawful conduct.

**Fifth Cause of Action:**

**Breach of Express Warranty**

**(by Plaintiff and the Class)**

154. Plaintiff incorporates each and every factual allegation set forth above.

155. Plaintiff brings this cause of action on behalf of herself and the Class.

156. Defendant, as the manufacturer, marketer, distributor, supplier, and/or seller of the Dooney & Bourke Products, issued material, written warranties by advertising that the Products had

a market value equal to the list price. This was an affirmation of fact about the Products (i.e., a representation about the market value) and a promise relating to the goods.

157. This warranty was part of the basis of the bargain and Plaintiff and members of the Class relied on this warranty.

158. In fact, the Dooney & Bourke Products' stated market values were not the market values. Thus, the warranty was breached.

159. Plaintiff provided Defendant with notice of this breach of warranty, by mailing a notice letter to Defendant's headquarters and registered agent, on September 14, 2026.

160. Plaintiff and the Class were injured as a direct and proximate result of Defendant's breach, and this breach was a substantial factor in causing harm, because (a) they would not have purchased Products if they had known that the warranty was false, (b) they overpaid for the Products because the Products were sold at a price premium due to the warranty, and/or (c) they did not receive the Products as warranted that they were promised.

161. For the breach of express warranty claims, Plaintiff seeks all damages available including expectation damages and/or damages measured by the price premium charged to Plaintiff and the other Class members as a result of Defendant's unlawful conduct.

**<u>Sixth Cause of Action</u>:**

**Quasi-Contract/Unjust Enrichment**

**(by Plaintiff and the Class)**

162. Plaintiff incorporates each and every factual allegation in paragraphs 1-77, 84-88 above.

163. Plaintiff brings this cause of action in the alternative to her Breach of Contract and Breach of Warranty claims (Counts Four and Five) on behalf of herself and the Class.

164. (In the alternative only), due to Defendant's misrepresentations, its contracts with Plaintiff and other Class members are void or voidable.

165. Plaintiff and the Class seek restitution, and in the alternative, rescission.

166. For the quasi-contract/unjust enrichment claims, Plaintiff seeks all available equitable relief, including injunctive relief, disgorgement, and restitution in the form of a full refund and/or

measured by the price premium charged to Plaintiff and the Class as a result of Defendant's unlawful conduct.

**<u>Seventh Cause of Action</u>:**

**Negligent Misrepresentation**

**(by Plaintiff and the Class)**

167. Plaintiff incorporates each and every factual allegation set forth above.

168. Plaintiff brings this cause of action on behalf of herself and members of the Class.

169. As alleged more fully above, Defendant made false representations and material omissions of fact to Plaintiff and Class members concerning the existence and/or nature of the discounts and savings advertised.

170. These representations were false.

171. When Defendant made these misrepresentations, it knew or should have known that they were false. Defendant had no reasonable grounds for believing that these representations were true when made.

172. Defendant intended that Plaintiff and Class members rely on these representations and Plaintiff and Class members read and reasonably relied on them.

173. In addition, Class-wide reliance can be inferred because Defendant's misrepresentations were material, i.e., a reasonable consumer would consider them important in deciding whether to buy the Dooney & Bourke Products.

174. Defendant's misrepresentations were a substantial factor and proximate cause in causing damages and losses to Plaintiff and Class members.

175. Plaintiff and the Class were injured as a direct and proximate result of Defendant's conduct because (a) they would not have purchased the Products if they had known that the representations were false, (b) they overpaid for the Products because the Products were sold at a price premium due to the misrepresentation, and/or (c) they did not receive the discounts they were promised, and received Products with market values lower than the promised market values.

176. For the negligent misrepresentation claims, Plaintiff seeks all damages available including expectation damages, punitive damages, and/or damages measured by the price premium charged to Plaintiff and the Class as a result of Defendant's unlawful conduct.

**<u>Eighth Cause of Action</u>:**

**Intentional Misrepresentation**

**(by Plaintiff and the Class)**

177. Plaintiff incorporates each and every factual allegation set forth above.

178. Plaintiff brings this cause of action on behalf of herself and members of the Class.

179. As alleged more fully above, Defendant made false representations and material omissions of fact to Plaintiff and Class members concerning the existence and/or nature of the discounts and savings advertised.

180. These representations were false.

181. When Defendant made these misrepresentations, it knew that they were false at the time that it made them and/or acted recklessly in making the misrepresentations.

182. Defendant intended that Plaintiff and Class members rely on these representations and Plaintiff and Class members read and reasonably relied on them.

183. In addition, Class-wide reliance can be inferred because Defendant's misrepresentations were material, i.e., a reasonable consumer would consider them important in deciding whether to buy the Dooney & Bourke Products.

184. Defendant's misrepresentations were a substantial factor and proximate cause in causing damages and losses to Plaintiff and Class members.

185. Plaintiff and the Class were injured as a direct and proximate result of Defendant's conduct because (a) they would not have purchased the Products if they had known that the representations were false, (b) they overpaid for the Products because the Products were sold at a price premium due to the misrepresentation, and /or (c) they did not receive the discounts they were promised, and received Products with market values lower than the promised market values.

186. For the intentional misrepresentation claims, Plaintiff seeks all damages available including expectation damages, punitive damages, and/or damages measured by the price premium charged to Plaintiff and the Class as a result of Defendant's unlawful conduct.

**VII. Relief.**

187. Plaintiff seeks the following relief for herself and the proposed Class:

- An order certifying the asserted claims, or issues raised, as a class action;
- A judgment in favor of Plaintiff and the proposed Class;
- Damages, treble damages, and punitive damages where applicable;
- Restitution;
- Disgorgement, and other just equitable relief;
- Pre- and post-judgment interest;
- An injunction prohibiting Defendant's deceptive conduct, as allowed by law;
- Reasonable attorneys' fees and costs, as allowed by law;
- Any additional relief that the Court deems reasonable and just.

**VIII. Demand for Jury Trial.**

188. Plaintiff demands the right to a jury trial on all claims so triable.

Dated: September 24, 2026

Respectfully submitted,

By: /s/ *Grace Bennett*

Simon Franzini (Cal. Bar No. 287631)
simon@dovel.com
Grace Bennett (Cal. Bar No. 345948)
grace@dovel.com
DOVEL & LUNER, LLP
201 Santa Monica Blvd., Suite 600
Santa Monica, California 90401
Telephone: (310) 656-7066
Facsimile: +1 (310) 656-7069

*Attorneys for Plaintiff*